OPINION
Plaintiff-appellant, Leslie Pasco, appeals the March 16, 1999 judgment entry of the Franklin County Court of Common Pleas granting judgment in favor of defendant-appellee, State Automobile Mutual Insurance Company. For the following reasons, we affirm in part and reverse in part.
This matter arises out of prior litigation between appellant and appellee's insured, BB Marine Sales and Service and its general partners, Robert McCoy and Bill Fannin (collectively, "BB Marine"), in Ottawa County, Ohio. In the Ottawa County litigation, appellant sued BB Marine alleging damages to her boat and raising, inter alia, claims of negligence and violations of Ohio's Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq. BB Marine was insured under a Preferred Business Policy and a Commercial Umbrella Liability Policy issued by appellee. Pursuant to the terms of these policies, appellee defended BB Marine in the underlying lawsuit reserving its rights to deny coverage for damages awarded for violations of the CSPA.
On July 21, 1994, the Ottawa County Court of Common Pleas issued its decision, generally finding in favor of BB Marine on most of appellant's claims but also finding certain technical violations of the CSPA. In so doing, the court specifically found that all damages sustained to appellant's boat were due to appellant's own negligence. As to the CSPA violations, the court found that a certain work order dated May 20, 1988, and the circumstances surrounding it, violated various CSPA regulations, in particular, those found in Ohio Adm. Code109:4-3-05 requiring notices informing consumers of their right to a written estimate for repair services, prohibiting charges for work performed without prior authorization, and requiring itemized lists for work performed and copies of documents to be given to consumers.
Ultimately, the trial court awarded appellant $1,800 in statutory damages ($200 per violation), $10,000 in attorney fees, $2,588.60 in expenses, and $960 in prejudgment interest. Pursuant to the judgment entry, the attorney fees and expenses were assessed as costs, to be paid directly to appellant. In settlement of the underlying Ottawa County litigation, BB Marine assigned to appellant any claims it had against appellee arising out of the Ottawa County litigation.
On August 30, 1996, appellant, as assignee of BB Marine's claims, filed suit in the Franklin County Court of Common Pleas against appellee. Appellant sought a declaration that under the insurance policies at issue, appellee was obligated to pay the statutory damages awarded and attorney fees assessed as costs in connection with the violations of the CSPA found in the underlying litigation. Appellant also raised claims for bad-faith refusal to pay or settle the damages awarded on the CSPA claims and for bad-faith failure to investigate and process the CSPA claims.
On June 5, 1997, appellee filed a motion for summary judgment as to all claims. Appellee argued that violations of the CSPA were not covered by the clear and unambiguous language of the applicable policies, that it had no obligation to pay the attorney fees assessed as costs, that it properly informed the insured that it was defending under a reservation of rights, and that appellant could prove no damages. Appellant responded arguing that the CSPA claims were covered by the language of the policies, that even if such claims were not specifically covered, the doctrines of waiver and estoppel barred appellee from failing to pay such claims, that attorney fees assessed as costs in the underlying litigation were covered by the clear and unambiguous language of the policies, and that genuine issues of material fact existed on their bad-faith claims.
On August 18, 1997, the trial court issued its decision granting appellee's motion for summary judgment in part and denying it in part. In so doing, the trial court made several rulings. First, the trial court ruled that the CSPA statutory damages were not covered under the clear and unambiguous language of the insurance policies. Second, the trial court ruled that there was a genuine issue of material fact as to whether the doctrines of waiver and estoppel, as enunciated in TurnerLiquidating Co. v. St. Paul Surplus Lines Ins. Co. (1994),93 Ohio App.3d 292, barred appellee from refusing to pay such claims. Third, the trial court ruled that the attorney fees assessed as costs were not recoverable because only those costs associated with covered claims were recoverable under the language of the policies. Finally, the trial court ruled that appellant's bad-faith failure to pay or settle claims could not be maintained since an insurer has no obligation to pay or settle a claim for which the policy does not provide coverage. The trial court did not separately address appellant's bad-faith failure to investigate claims.
The issue of whether the doctrines of waiver and estoppel barred appellee from refusing to cover the damages awarded for violating the CSPA was tried to a magistrate. On June 22, 1998, the magistrate issued its decision finding that BB Marine was not prejudiced by the timing or manner in which they were notified that appellee would deny coverage for the CSPA claims. As such, the magistrate recommended that judgment be rendered in favor of appellee and against appellant.
Appellant filed objections to the magistrate's decision. On March 16, 1999, the trial court issued its decision and entry, overruling appellant's objections and approving and adopting the magistrate's decision as its own. It is from this final judgment that appellant appeals, raising the following three assignments of error:
 1. The trial court erred in granting in part State Auto Mutual Insurance Company's Motion for Summary Judgment and in granting judgment in favor of State Automobile Insurance Company on Plaintiff-Appellant's claims for insurance coverage, and claims for bad faith refusal to pay or settle claims and bad faith claims handling.
 2. The trial court erred in granting judgment after trial in favor of State Automobile Insurance Company (by approving and adopting the Magistrate's Report and Recommendation over Plaintiff-Appellant's timely objection to findings of fact and conclusions of law therein) on Plaintiff-Appellant's claims for insurance coverage on theories of waiver and/or estoppel.
 3. The trial court's judgment is against the manifest weight and sufficiency of the evidence.
In her first assignment of error, appellant challenges the trial court's August 18, 1997 summary judgment decision. A trial court shall grant summary judgment only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C);Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66.
Here, appellant argues that the trial court erred in making three specific rulings: (1) that CSPA damages were not covered under the language of the policies at issue; (2) that attorney fees assessed as costs against BB Marine in the underlying action were not covered under the language of the policies at issue; and (3) that there were no genuine issues of material fact as to appellant's bad-faith claims. We address each of appellant's claims in turn.
1. CSPA statutory damages.
On appeal, appellant concedes that the CSPA statutory damages awarded in the underlying litigation are not covered under the liability provisions for property damage as set forth in the primary business and umbrella policies. Appellant contends, however, that the damages are recoverable under the umbrella policy's indemnification provision related to liability arising out of an advertising offense. The relevant provision of the umbrella policy provides as follows:
 The Company [appellee] will indemnify the insured [f]or ultimate net loss * * * which the insured shall become legally obligated to pay as damages because of
A. personal injury or
B. property damage or
C. advertising offense
to which this policy applies, caused by an occurrence.
The umbrella policy defines an "advertising offense" to mean "libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the insured's
advertising activities." (Emphasis sic.)
Appellant contends that the CSPA violations found by the trial court in the underlying litigation constitute "unfair competition" arising out of BB Marine's advertising activities and, as such, constitutes damages arising out of an "advertising offense." We disagree.
The fundamental goal in interpreting an insurance policy, like any other contract, is to ascertain the intent of the parties. Boso v. Erie Ins. Co./Erie Ins. Exchange (1995),107 Ohio App.3d 481, 487. If the contract language is clear and unambiguous, then its interpretation is a matter of law. HeritageMut. Ins. Co. v. Ricart Ford, Inc. (1995), 105 Ohio App.3d 261,266. However, where language in an insurance policy is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. Id.
"The test for determining whether language used in an insurance policy is ambiguous is whether that language is `* * * reasonably susceptible of more than one interpretation.'" Santana v. AutoOwners Ins. Co. (1993), 91 Ohio App.3d 490, 494. The mere fact that a term in an insurance policy is not defined does not, by itself, make the term ambiguous. Boso, supra, at 486 (citingNationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108). Rather, undefined terms in an insurance policy must be given their plain and ordinary meaning, if any. Id.
Here, the CSPA violations found in the underlying action cannot reasonably be interpreted to fall within the meaning of "unfair competition" as that term is used in the umbrella policy at issue here. The purpose of the CSPA is to protect consumers, not competitors, from the harm of deceptive or unconscionable sales practices. See Crye v. Smolak (1996), 110 Ohio App.3d 504,512; Fletcher v. Don Foss of Cleveland, Inc. (1993), 90 Ohio App.3d 82,87. In general, harm to consumers does not equate with harm to competitors and, hence, does not equate with unfair competition. Cf. Heritage Mut. Ins. Co., supra, at 266 (allegations of harm to consumers but not competitors failed to trigger coverage under policy providing coverage for "misappropriation of the style of doing business"). This is especially true where the CSPA violations, as found in the underlying litigation here, involved a single consumer and related to a single transaction.
Appellant argues that BB Marine's failure to follow the CSPA gave it a competitive advantage over its competitors that followed the requirements of the CSPA. Appellant's argument, however, is not only factually unsupported by the record, its logical conclusion turns any violation of any business regulation or law into "unfair competition." We do not believe that such an unreasonable result was intended by the use of the words "unfair competition." As such, we find that the trial court did not err in holding that the statutory damages awarded against BB Marine for violating the CSPA in this case were not covered as a matter of law under the insurance policies at issue here.
2. Attorney Fees Assessed as Costs.
The Ottawa County Court of Common Pleas awarded attorney fees under R.C. 1345.09(F), which allows the court to award such fees against persons who knowingly commit acts in violation of the CSPA. As noted above, the court assessed the attorney fees as costs. Appellant contends that, under the policies, appellee is required to pay the attorney fees assessed as costs against its insured in the underlying Ottawa County litigation. In so doing, appellant relies on the following language from the primary liability policy:
 Supplementary Payments. The company will pay, in addition to the applicable limit of liability:
 (a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company * * *. [Emphasis added.]
The trial court ruled that this provision does not cover the attorney fees assessed as costs in the underlying Ottawa County litigation because it only covers costs associated with covered claims. The trial court reasoned that the prefatory language "in addition to the applicable limit of liability" indicates that the cost provision applies only if the applicable limit of liability is first triggered, i.e., if the claim giving rise to the costs is one in which liability coverage applies. Since, according to the trial court, the attorney fees arose out of the CSPA violations to which no liability coverage applies, appellant is not liable for the costs (including the attorney fees) associated with those claims.
We find, however, that the trial court's interpretation is not the only reasonable interpretation of the policy. The language could reasonably be interpreted to mean that appellee will pay all costs taxed against the insured in a suit defended by appellee, irrespective of, and in addition to, the liability limits provided under the policy. Nothing in the language makes payment of costs contingent on liability coverage first being triggered. In fact, the provision's use of the language "all
costs taxed in any suit defended by the company" (as opposed to "those costs taxed against the insured and associated with a covered claim") indicates that no such requirement exists. Moreover, the trial court's interpretation is inconsistent with the balance of the "supplementary payments" provision. For example, under division (c), appellee agreed to pay the "expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies." (Emphasis added.) The limiting language "to which this policy applies" would be superfluous under the trial court's interpretation since the "supplementary payments" provision itself would not be triggered unless coverage first applied.
Given the requirement that we construe ambiguous language strictly against the insurer and liberally in favor of the insured, we find that the primary policy's "supplementary payments" provision does cover the costs (including attorney fees) under the specific facts of this case assessed against appellee's insured in the Ottawa County litigation.[1] As such, the trial court erred in granting summary judgment for appellee on this claim.
3. Bad-faith Claims.
Appellant also challenges the trial court's decision granting summary judgment on appellant's claims for bad-faith failure to pay or settle the CSPA claims and for bad-faith failure to investigate the CSPA claims. As noted above, the trial court ruled that, because the policies at issue did not cover the damages arising out of the CSPA violations, appellant could not maintain a bad-faith claim against appellee related to appellee's handling of such claims. Appellant contends that the trial court erred in concluding that appellant's lack of success on their contract coverage claim precluded their bad-faith claim, especially one based upon appellee's alleged failure to properly investigate the claims.
It is well established that an insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph two of the syllabus. In Zoppo v. HomesteadIns. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus, the Ohio Supreme Court established the standard governing whether an insurer acted in bad-faith: "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." The duty of good faith is grounded in the recognition of the disparity in economic positions that often exists between the insurer and insured, seeHoskins, at 275, and to ensure that the acts of the insurer do not impair the insured's right to receive the benefits that would flow from the contractual relationship, see Buckeye UnionInsurance Co. v. State Farm Mut. Auto. Ins. Co. (Apr. 16, 1997) Hamilton App. No. C-960282, unreported.
Given these basic principles, appellant cannot show that the trial court erred in granting summary judgment as to her claims of bad-faith as to appellee's handling of the CSPA claims. As discussed above, appellee defended its insured in the underlying litigation, including the CSPA claims, with a reservation of its right to refuse coverage for any CSPA violation. Appellee's justification for its refusal to pay the CSPA statutory damages was that such claims were not covered under the clear and unambiguous language of the applicable policies, and this coverage decision has been upheld by this court. "Obviously, if a reason for coverage denial is correct, it is per se reasonable." GRE Ins. Group v. Int'l. EPDM Rubber RoofingSystems, Inc. (Apr. 30, 1999), Lucas App. No. L-98-1387, unreported (given that insurer's denial of coverage was proper, plaintiff's bad-faith claim could not be maintained).
Appellant relies on Bullet Trucking, Inc. v. Glen FallsIns. Co. (1992), 84 Ohio App.3d 327, for the proposition that an insured need not establish coverage under the policy to maintain a bad-faith failure to investigate claims against the insurer. We find Bullet Trucking to be unpersuasive. In Bullet Trucking, at 333-334, the Montgomery County Court of Appeals indicated in dicta
that a bad-faith claim based solely upon the insurer's failure to properly investigate whether there was a lawful basis to refuse coverage could be maintained even though the insured otherwise failed to establish that coverage did apply. In so doing, theBullet Trucking court cited no additional authority for this proposition, and appellant has cited none here. Research by this court has failed to reveal any case in which a bad-faith claim was maintained when the insurer defended its insured under a reservation of right to deny coverage as to a particular claim and the insurer's coverage decision was determined to be correct. As such, we find that the trial court correctly ruled that appellant could not maintain her bad-faith claims for failure to settle, pay, or investigate the CSPA claims at issue here.
Moreover, to the extent that the trial court failed to separately address appellant's bad-faith-failure-to-investigate claim in its summary judgment decision, we find that appellant can show no prejudice. The magistrate permitted appellant to fully litigate its case at the trial, including the presentation of evidence as to her claim that appellee failed to properly investigate the CSPA claims. The magistrate specifically ruled, however, that appellant failed to prove that appellee improperly investigated all the claims it was required to investigate pursuant to the terms of the policies and failed to prove that appellee improperly and inadequately defended the insured in the underlying lawsuit. Given these findings, which were subsequently adopted as part of the magistrate's decision by the trial court, appellant can show no prejudice in the trial court's disposition of appellant's bad-faith claims.
For the foregoing reasons, appellant's first assignment of error is sustained in part and reversed in part.
In her second and third assignments of error, appellant challenges the trial court's resolution of whether appellant proved that appellee was barred from denying coverage by application of the doctrine of waiver and estoppel. The doctrine of waiver and estoppel has been held to bar an insurer from denying coverage if the insurer makes a clear misrepresentation as to coverage or if the insurer provides a defense without reserving its rights for a period of time sufficient to prejudice the insured's ability to conduct its own defense. See TurnerLiquidating, supra, at 299-300; see, also, Collins v. Grange Mut.Cas. Co. (1997), 124 Ohio App.3d 574, 577-579. The trial court referred the matter to the magistrate for trial on this issue. As noted above, the magistrate ruled that neither doctrine factually applied in this case, and the trial court adopted this decision. On appeal, appellant essentially makes two arguments: (1) that the trial court improperly placed the burden on appellant to show prejudice; and (2) that the trial court's finding (by adopting the magistrate's report) that appellee's insured was not prejudiced by the manner or timing of appellee's reservation of rights was against the manifest weight of the evidence. We find neither of appellant's contentions persuasive.
Appellant contends that a presumption of prejudice arises because of the inherent conflict of interest whenever an insurer fails to approve coverage for all claims asserted against the insured but, nevertheless, "unilaterally control[s]" the defense of the insured. (Appellant's brief at 43.) Appellant cites no authority for this broad and sweeping contention. Cf.Collins, at 577 (noting that "there is an obvious potential for a conflict of interest where an insured assumes and controls a defense for its insured but also intends to challenge its coverage liability if the defense is unsuccessful"). Rather, appellant primarily relies on cases, in particular, Belcher v. Dooley (Feb. 16, 1988), Montgomery App. No. 10444, unreported, which discuss the inherent conflict between an insured and an insurer when the damages sought by a third party in the underlying litigation may have been caused by insured's intentional acts and, thus, are not covered by the insurance policy.
In Belcher, the court noted that the proper course of conduct for the insurance company in such cases is to inform its insured to obtain his own counsel at the expense of the insurance company. According to the court, such a procedure would ensure that counsel's interests and the client's would be identical and would remove any conflict of interest that would exist between counsel, chosen by the insurer, and his client. In so discussing, the Belcher court relied extensively on Chief Justice O'Neill's concurring opinion in State Farm Fire Cas. Co. v. Pildner
(1974), 40 Ohio St.2d 101, 105-106, in which he stated:
 If the insurance company does not assert noncoverage, there is no conflict between the insurer and the insured who is being sued, and hence the counsel selected by the insurance company could ethically defend the insured. However, in the present case the insurer alleges that the insured intentionally caused the injuries which are the basis of the damage suit, and that, therefore, his actions are outside the scope of the insurance policy. In such case, although the company has a duty to defend the insured, there is an undeniable conflict between the insurance company and the insured. The insured, if he cannot totally escape liability, will desire to show that his liability is based on negligent conduct which is covered by his insurance policy. The insurance company will, on the other hand, desire to prove that the insured's actions were intentional and hence not within the scope of the policy. Under these facts, I believe that D. R. 5-105, which is mandatory, dictates that the insurance company not be allowed to select counsel to defend the insured. The adversity between the insurance company and the insured, coupled with the pressure which the insurance company could exert on counsel selected by it, simply presents too great a possibility that that counsel's loyalty to the insured will be diluted.
 The insurance company, when it notifies an insured who is being sued that it denies coverage, should invite the insured to select his own counsel to represent him in the damage action. If the action is one in which the insurance company has a duty to defend, reasonable attorney fees and other proper costs incurred by the insured in making his defense will ultimately have to be assumed by the insurance company. * * *
Appellant has failed to show how such adversity was present in the underlying litigation here. Appellee defended its insured, BB Marine, on all claims in the underlying litigation. The facts related to the negligence claims (those for which appellee had potential liability) had no relation to the facts forming the basis of the CSPA violations. Thus, appellee's interest and efforts in defending BB Marine on the negligence claims (and thus avoiding liability coverage) did not increase BB Marine's exposure to liability under the CSPA. In short, the trial court did not err in failing to presume any prejudice in this case based upon a claimed inherent conflict of interest between appellee and its insured. Cf. Lusk v. Imperial Cas. Indemn. Co. (1992), 78 Ohio App.3d 11, 16 (no conflict of interest existed when insurer did not defend on theory that insured's liability precluded their own).
Similarly, we reject appellant's contention that the trial court's finding that BB Marine was not prejudiced by the timing or manner of appellee's reservation of rights is against the manifest weight of the evidence. In considering whether a civil judgment is against the manifest weight of the evidence, we are guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C. E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus; see, also, Myers v.Garson (1993), 66 Ohio St.3d 610, 615-616 ("an appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court").
Here, there is competent and credible evidence supporting the trial court's conclusion that BB Marine was not prejudiced by the timing and manner of appellee's reservation of rights. The record reveals that the underlying lawsuit was filed on March 1, 1990. On April 2, 1990, appellee sent a general reservation of rights letter to BB Marine. On April 18, 1991, appellee sent BB Marine's counsel a specific reservation of rights letter, denying coverage for the CSPA claims. Evidence in the record also supports a conclusion that counsel for BB Marine informed BB Marine's general partners about appellee's denial of coverage on the CSPA claims and that neither partner, Robert McCoy nor Bill Fannin, asserted any prejudice by appellee's timing of their reservation of rights letters. Neither partner testified below that they were prejudiced by the timing or manner of appellee's reservation of rights and, in fact, McCoy specifically testified, by way of deposition, that he had not been damaged or disadvantaged by appellee's actions. In sum, the trial court's decision that appellant failed to show that BB Marine was prejudiced by the timing or manner of appellee's reservation of rights is not against the manifest weight of the evidence. Cf.Collins, supra (trial court's finding of prejudice upheld when evidence showed that: [1] insurer initially gave impression that coverage applied; [2] insurer failed to reserve rights sixteen months after assuming defense; and [3] had insured known earlier, he would have taken a more active role in the litigation and pursued settlement options more aggressively). Appellant's second and third assignments of error are not well-taken and are overruled.
For the foregoing reasons, we find that appellant's first assignment of error is sustained in part and reversed in part, and appellant's second and third assignments of error are not well-taken and are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part and this case is remanded to that court for further proceedings.
Judgment affirmed in part, reversed in part; case remanded for further proceedings.
PETREE and BOWMAN, JJ., concur.
[1] One could question whether the attorney fees awarded under R.C. 1345.09(f) should be assessed "as costs" or as damages. In general, absent specific statutory authority, attorney fees are not "costs." See Muze v. Mayfield (1991), 61 Ohio St.3d 173. R.C. 1345.09(f) does not indicate whether attorney fees are costs or damages, but merely states that under certain circumstances, the court may award such fees. But, see, Easterday v. Gumm (Nov. 15, 1996), Ross App. No. 96 CA 2179, unreported (attorney fees awarded under CSPA are to be considered costs). Regardless, neither appellee nor its insured appealed the decision of the Ottawa County Court of Common Pleas assessing the attorney fees "as costs." As such, appellee is precluded from challenging this determination here.