COLLINS

v.

**GRANGE MUTUAL CASUALTY COMPANY, Appellant;**
**Bush Auto Place, Inc., Appellee.**

[Cite as *Collins v. Grange Mut. Cas. Co.* (1997), 124 Ohio App.3d 574.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA97–02–002.

Decided Dec. 29, 1997.

*Pickrel, Schaeffer & Ebeling, John W. Slagle* and *Michael W. Sandner,* for appellant.

*Taft, Stettinius & Hollister, R. Joseph Parker* and *Marcia V. Andrew,* for appellee.

WILLIAM W. YOUNG, Presiding Judge.

Appellant, Grange Mutual Casualty Co., appeals a declaratory judgment in favor of Appellee, Bush Auto Place, Inc. The trial court found that Grange waived its right to assert policy exceptions under its insurance contract with Bush Auto Place, and was estopped from denying coverage for the settlement of a personal injury complaint against Bush Auto.

On May 24, 1990, Angelo Collins was seriously injured while operating a hydraulic lift as an employee at Bush Auto. At the time, Bush Auto had two commercial liability policies with Grange, a "primary" policy and an "umbrella" policy. Both policies contained exclusion clauses denying coverage for an employee's personal or bodily injury "arising out of and in the course of his employment."

On May 24, 1991, Collins filed an action for damages against Bush Auto in the Clinton County Court of Common Pleas. The president of Bush Auto, George Bush, notified Grange of the lawsuit. Bush also brought the complaint to attorney James Miller. Miller had represented both Bush and Grange in the past. On June 21, 1991, Grange retained Miller to defend Bush Auto against Collins's complaint. A Grange regional claims supervisor initially assigned a $10,000 reserve to Collins's complaint. One of Collins's claims asserted an intentional tort, and Miller recommended retention of a specialist, attorney Dan Buckley, a partner with Vorys, Sater, Seymour & Pease ("Vorys"). Bush agreed to Buckley's representation, and Buckley began working on the case in July 1991. Charles Eugene West, Grange's Claims/Legal Administrator, subsequently approved Buckley's retention.

At some point, West took over direct supervision of Bush Auto's claim file. In his position with Grange, West had authority to determine the existence of coverage and to authorize settlement in any given case up to policy limits. On

November 15, 1991, West sent Miller a letter expressing doubt about Grange's coverage liability, but West also wrote that "any opinion that there is no liability coverage or duty to defend Claims I and Claims II may be subject to attack" in light of *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906. To avoid the coverage issue, West suggested that Bush sign a "nonwaiver agreement" stipulating that Grange had not waived its right to deny coverage by proceeding with a defense. Bush, however, did not learn of the proposed nonwaiver agreement until sometime in 1993, and never signed the document.

On June 22, 1992, Bush, Buckley, Miller, and West met at Grange's headquarters to discuss defense strategy and the possibility of settlement. Bush later recalled West saying something to the effect that there was up to $1,000,000 in coverage available under Bush Auto's insurance policies with Grange. West did not recall making that statement, although he did recall telling Bush that Grange wanted to aggressively pursue Bush Auto's defense. Buckley, however, corroborated Bush's recollection that West suggested that there was coverage. Buckley specifically recalled that West explained that there might be coverage based on the *Physicians Ins.* case.

After the June 22 meeting, both Bush and Buckley believed Bush Auto had up to $1,000,000 in coverage from Grange. Thereafter, Bush did not actively participate in the litigation, or offer the attorneys any guidance or suggestions on how to settle Collins's claims. West, however, supervised all aspects of the litigation. He requested and received frequent and detailed reports on discovery. He was also responsible for approving major activity in the case, including discovery depositions and independent medical examinations. For example, he authorized Vorys to file a motion for summary judgment, which he reviewed in advance. Fee statements from both Miller and Vorys were sent directly to Grange, reviewed by West or someone in his department, and paid directly by Grange.

On October 8, 1992, the parties held a second meeting at Grange's headquarters to discuss settlement of Collins's complaint. There was no discussion of Grange's coverage liability. Buckley told West that he believed there was $750,000 in potential liability, and he asked for settlement authority up to $350,000. West appeared surprised at the figures, and claimed he had to discuss any settlement with his loss advisory committee. West, however, did not advise Bush or Buckley that he believed there was no coverage under the policy or that Grange would not participate in a settlement.

West subsequently convened a meeting of Grange's Claims Advisory Committee. The committee decided there was no coverage. In November 1992, West contacted Miller and told him that Grange would deny coverage, and would not

provide any funds for a settlement. West, however, said that Grange would continue to defend the suit. Sometime thereafter, Bush retained the Taft, Stettinius & Hollister law firm to represent Bush Auto. On December 9, 1992, an attorney with Taft informed Grange that Bush Auto considered it to be estopped from denying coverage.

On January 21, 1993, Collins filed a declaratory judgment action against Grange in the Clinton County Court of Common Pleas. Collins sought a determination that Grange was required to indemnify Bush Auto on his damages claim. Bush Auto filed a cross-claim against Grange. On May 18, 1993, over sixteen months after its decision to assume Bush Auto's defense, Grange sent Bush Auto a "reservation of rights" letter indicating it was reserving its right to deny coverage while it proceeded with Bush Auto's defense. After Bush received the reservation-of-rights letter on May 18, he became active in the litigation and pursued settlement negotiations. On December 31, 1993, Bush Auto settled Collins's underlying claims for $215,000.

In September 1994, the trial court held a bench trial on Bush Auto's claim against Grange for declaratory judgment on the indemnification issue. The trial court held that Bush Auto was entitled to indemnification from Grange for the full $215,000 settlement of Collins's complaint. The trial court found that Bush Auto had been prejudiced by Grange's assumption and control of its defense for over sixteen months without a reservation of right to challenge coverage. The court concluded that Grange had waived its right to assert its policy exclusions, and was estopped from denying coverage to Bush Auto.

On appeal, Grange sets forth two assignments of error for review. Under its first assignment of error, Grange asserts that "the trial court erred as a matter of law in failing to consider Grange's argument that [Bush Auto] had to be prejudiced as a result of any delay in Grange's asserting its reservation of rights." Under Grange's second assignment of error, it asserts that "the decision of the trial court was against the manifest weight of the evidence in finding [Bush Auto] prejudiced as a matter of law." Both assignments of error are closely related, and this court will consider them together.

There is an obvious potential for a conflict of interest where an insurer assumes and controls a defense for its insured but also intends to challenge its coverage liability if the defense is unsuccessful. An insurer, however, may conduct an insured's defense in good faith without waiving its right to assert any policy defenses, *"provided that it gives the insured notice of any reservation of rights."* (Emphasis added.) *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph one of the syllabus. This is sound policy because the insured should know of the potential for a conflict in

interest before accepting or proceeding with the insurer's offer to provide a defense.

■ Generally, "the doctrine of waiver cannot be employed to expand the coverage of a policy." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 668, 597 N.E.2d 1096, 1103, citing 16B Appleman, Insurance Law and Practice (1981) 579, Section 9090.[1] An exception to that general rule may occur, however, when the insurer provides a defense to the insured without reserving its rights under the policy. *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 299, 638 N.E.2d 174, 179. In *Turner,* the court wrote:

"An insurer should not be able to avoid liability under all circumstances in which it voluntarily relinquishes a known right or induces another into changing his position based upon reliance on the insurer's conduct when the insured is prejudiced by such reliance. * * * *In cases where the insurer represents the insured without a reservation of rights, the insured may be prejudiced by the legal strategy adopted by the insurer.*" (Emphasis added.) *Id.*

The appellate court in *Turner* concluded that the doctrines of waiver and estoppel apply when an insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured. *Id.* The court reasoned that "[i]f the insurer is saddled with coverage it may not have intended or desired, it is of its own making. The insurer has the ability to protect itself against such claims by ensuring that its customers receive the coverage they request or by entering a defense of a claim that may not be covered by the policy only after reserving its right to raise policy defenses at a later time." *Id.*

The principle espoused in *Turner* is not new. In *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (App.1944), 45 Ohio Law Abs. 458, 67 N.E.2d 836, the insurer, without reserving its rights, provided a defense to its insured for approximately one year before it denied liability and withdrew its defense. The insured hired an attorney, and the plaintiff subsequently dismissed its complaint. The insured then sued the insurer for its attorney fees. The court of appeals concluded that by representing the insured for a year without a reservation of rights, the insurer had waived any right under the policy to challenge coverage. *Id.* at 464–465, 67 N.E.2d at 839–840. The Ohio Supreme Court affirmed the appellate court on different grounds. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 397, 29 O.O. 563, 569, 59 N.E.2d 199, 205. The Supreme Court concluded that the insurer was liable for attorney fees based

---

1. In *Hybud,* the insurer failed to raise an exclusion in a prelitigation letter denying coverage.

upon a breach of contract. Nevertheless, the Supreme Court noted that waiver or estoppel could operate in proceedings to compel an insurer to pay a judgment recovered in a damage suit in which the insurer had provided a defense without a reservation of rights. *Id.* at 392, 29 O.O. at 567, 59 N.E.2d at 203.

In this case, the trial court found that Grange had assumed and controlled Bush Auto's defense against Collins's suit for over sixteen months without a reservation of rights. The trial court also noted that after West suggested that there was coverage at the June 22, 1992 meeting, Bush did not actively participate in Bush Auto's defense. Importantly, West acknowledged that Grange wanted to proceed to trial in the hopes of obtaining a defense verdict. In that case, the coverage issue would be moot. West also acknowledged that if the defense lost at trial, Grange intended to deny coverage. The trial court found, however, that Grange did not inform Bush Auto that it planned to challenge its coverage liability, or that it would not agree to fund a settlement. If Bush had been aware that Grange planned to deny coverage, he could have taken a more active role in the litigation and pursued settlement options more aggressively.

Grange complains that Bush Auto cannot demonstrate actual prejudice. Grange argues that Bush Auto reached a favorable settlement, and that Bush Auto would not have conducted its defense differently even if Grange had properly reserved its right to contest coverage. This is purely speculative. " 'The course cannot be rerun[;] no amount of evidence will prove what might have occurred if a different route had been taken.' " *Ins. Co. of N. Am. v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302, 323, 692 N.E.2d 1028, 1041, quoting *Transamerica Ins. Group v. Chubb & Son, Inc.* (1976), 16 Wash.App. 247, 252, 554 P.2d 1080, 1083 (ten months without a reservation of rights was sufficient to establish prejudice). It is equally speculative to consider what Bush Auto could or would have done differently if Grange had not given it the impression that coverage was available. Grange, however, easily could have avoided the potential for prejudice by clearly reserving its right to contest coverage within a reasonable time after it assumed Bush Auto's defense.

Under these circumstances, the trial court could properly find that Grange's assumption of Bush Auto's defense without a reasonable reservation of rights was prejudicial. Therefore, the trial court properly concluded that Grange waived its right to assert its policy exclusions, and was estopped from denying indemnification for the settlement. Grange's two assignments of error are overruled.

*Judgment affirmed.*

WALSH, J., concurs.

POWELL, J., dissents.

POWELL, Judge, dissenting.

I would sustain appellant's first and second assignments of error and reverse the judgment of the trial court.

I believe that the law in Ohio as to prejudice to an insured by virtue of an insurer's failure to give seasonable notice of a coverage disclosure was properly stated by Judge Reece of the Ninth Appellate District in *Turner Liquidating v. St. Paul Surplus* (1994), 93 Ohio App.3d 292, 638 N.E.2d 174, with Judges Baird and Cook concurring. *Turner* essentially holds, for this purpose, that prejudice must be shown by the record, not presumed by a mere measure of time, as the lower court found in this case.

Here, West told Miller, Bush's lawyer, by letter dated November 15, 1991, that coverage was uncertain. This first communication to Miller was only five months after Miller filed the answer to the complaint for Bush. The trial court measures time from the filing of the complaint on May 24, 1991, to the reservation of rights letter sent by West to Bush on May 18, 1993. In twenty-two separate fact findings, the trial court finds no facts as to actual prejudice, but rather concludes as a matter of law that Bush was prejudiced by giving up the right to conduct his own defense. This contradicts Bush's own testimony that he was involved in this litigation from the outset.

The general rule is that waiver and estoppel cannot be used to extend the coverage of an insurance policy. This could leave no recourse for an insured whose insurer withdraws its defense the day before trial. The Ninth District's exception to the general rule allows the insured an opportunity to show that a last-hour withdrawal may prejudice his or her rights. *Turner* at 299, 300, 638 N.E.2d at 179, 179–180. The trial court below has swung the pendulum all the way to the other side by presuming prejudice by the mere passage of time where none is shown in fact. I think the middle ground requiring the insured to show actual prejudice to qualify for the exception is the just result. Therefore, I would reverse.