OPINION
Defendants-Appellants, Lee and Melanie Reno, appeal from a summary judgment for Plaintiff-Appellee, GuideOne Mutual Insurance Company ("GuideOne"), on GuideOne's complaint seeking a declaration that a homeowner's liability insurance policy it had issued to the Renos provided no coverage for liability claims in a civil action commenced against the Renos by Jeffrey A. Cooper.
Cooper purchased a home from the Renos in 1998. Cooper soon discovered that the structure was infested with termites, which had caused major structural damage to the home. On June 30, 1999, Cooper commenced a civil action against the Renos alleging: (1) intentional fraudulent misrepresentation and concealment; (2) negligent or reckless misrepresentation and concealment; and, (3) civil conspiracy to defraud.
The Renos notified GuideOne of Cooper's action. GuideOne responded that it would not provide a legal defense for the Renos because Cooper's claims were outside the scope of the coverage its policy provided them. The Renos then engaged their own counsel to represent them.
On October 20, 1999, counsel for the Renos sent a letter to GuideOne asserting that GuideOne was required by its policy to provide the Renos with legal representation in the action Cooper had filed. On October 21, 1999, GuideOne responded that it would begin an investigation of the matter.
On November 8 and November 17, 1999, counsel for the Renos again sent letters to GuideOne, asserting that GuideOne had a duty to defend the Renos. Finally, also on November 17, 1999, GuideOne sent a letter to the Renos stating that GuideOne had in fact retained counsel to defend the Renos against Cooper's claims.
However, on December 3, 1999, GuideOne sent a "reservation of rights" letter to the Renos, which indicated that while it would provide the Renos with legal representation, GuideOne did not waive its right to disclaim coverage. In addition, the letter indicated that GuideOne's position at the time remained that it could not provide coverage pursuant to the policy.
On December 8, 1999, counsel for the Renos sent a letter to GuideOne which argued that GuideOne had waived its right to deny coverage by its letter on November 17, 1999. The letter also argued that there now existed a conflict of interest between the Renos and GuideOne, so that GuideOne was required to pay his fees as counsel for the Renos. On December 21, 1999, GuideOne sent a letter to the Renos, stating that the GuideOne November 17, 1999, letter was sent in error, that it had no duty to provide coverage.
On September 8, 2000, GuideOne filed a declaratory judgment action, seeking a declaration that it had no duty to defend or indemnify the Renos in Cooper's action against them. Both the Renos and Cooper filed counterclaims on the issue. The Renos also sought a declaration that they had a right to retain their own counsel at GuideOne's expense. The declaratory judgment action was consolidated with Cooper's action against the Renos.
GuideOne and the Renos each filed motions for summary judgment on the claims asserted in the declaratory judgment action. On May 25, 2001, the trial court granted GuideOne's motion, finding that it had no duty to indemnify or defend the Renos. The court also denied the Renos' motion.
The Renos filed timely notice of appeal. They present three assignments of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF GUIDEONE INSURANCE COMPANY, RELIEVING IT FROM THE DUTY TO DEFEND OR INDEMNIFY LEE C. AND MELANIE J. RENO IN COOPER V. RENO, ESPECIALLY IN LIGHT OF ITS PROMISE TO DEFEND EVEN GROUNDLESS, FALSE, OR FRAUDULENT CLAIMS.
 "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) thereis no genuine issue of material fact, (2) the moving party is entitled tojudgment as a matter of law, and (3) reasonable minds can come to but oneconclusion and that conclusion is adverse to the nonmoving party, saidparty being entitled to have the evidence construed most strongly in hisfavor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-70.
 "Because a trial court's determination of summary judgment concerns aquestion of law, we apply the same standard as the trial court in ourreview of its disposition of the motion; in other words, our review is denovo." Am. States Ins. Co. v. Guillermin (1996), 108 Ohio App.3d 547,552.
The terms of art employed in writing insurance policies have provided a fertile field for litigation in recent years. That is especially true in the case of liability insurance policies. Therefore, and in the hope of clarifying the questions presented, we will begin our inquiry by returning to the fundamental principles involved.
An insurance policy is a contract in which the insurer promises to indemnify the insured for losses incurred by the insured which arise out of the occurrence of a risk identified in the policy. The insurer's promise is the "coverage" which the policy provides. "Coverage" questions generally present two issues: (1) what risk of loss to the insured did the insurer promise to indemnify, and (2) did that risk, as the policy defines it, occur?
The risk that a policy of liability insurance "covers" is actual or potential legal liability of the insured. The risk occurs, and the insurer's duty to provide the promised coverage exists, when an act or omission legally chargeable to the insured results in a form of injury and loss to a third party that's identified in the policy, or is alleged to have resulted in that injury and loss in pleadings in a civil action the third party commences against the insured.
The promises to defend and indemnify impose separate duties, triggered by different events. The duty to indemnify is triggered by the insured's actual legal liability. The duty to defend is a prior duty that's triggered by the insured's demand that the insurer provide a defense to a claim of alleged liability.
Whether a civil action commenced by a third party creates a duty in the insurer to defend and indemnify the insured against possible liability to the third party is determined with reference to the terms of the policy and the claim or claims for relief alleged in the action. That determination may be made in an action for declaratory judgment filed by the insurer. Preferred Risk Insurance Co. v. Gill (1987),30 Ohio St.3d 108. Unless it is clear and unequivocal that the insurerhas no duty of coverage, coverage must be provided. City of WilloughbyHills v. Cincinnati Insurance Co. (1984), 9 Ohio St.3d 177.
 The Renos, relying on the distinctions the Supreme Court drew inPreferred Risk, supra, concerning its prior holding in Willoughby Hills,supra, argue that the promise in GuideOne's policy that it will covereven "groundless, false, or fraudulent" lawsuits in which liabilityclaims are made requires coverage of Cooper's claims against them,because GuideOne's promise is not expressly limited to such groundless,false or fraudulent claims "to which this coverage applies," which wasthe situation in Preferred Risk, supra. We do not agree.
The distinction in Preferred Risk, supra, referred to the circumstancein Willoughby Hills, supra, wherein the allegations in the underlyinglawsuit present claims that are potentially or arguably within thepolicy's coverage, or there is some doubt as to whether a theory ofrecovery within policy coverage has been pleaded. Where such ambiguitiesexist, an insurer's unqualified promise to cover groundless, false, orfraudulent claims requires it to provide coverage. The unqualifiedpromise does not, in and of itself create coverage, however. The promisemerely prevents the insurer from avoiding the duty when doubts andambiguities of the kind identified in Willoughby Hills, supra, exist.
Further, the promise that GuideOne made in its policy was a qualified promise. The words "to which this coverage applies" do not appear in a prepositional phrase modifying the promise to defend even groundless, false, or fraudulent claims. However, that promise is itself made with respect to an "`occurrence' to which this coverage applies," which appears in a preamble to the paragraph in which the promise appears. The same limiting effect results in both instances. Therefore, GuideOne has no duty to defend and indemnify the Renos against the Coopers' claims, if GuideOne clearly shows that Renos alleged acts out of which the liability claims against them arise are outside the policy's coverage. PreferredRisk, supra.
The Renos concede that Cooper's first claim for relief, alleging fraudulent misrepresentation and concealment, are outside the coverage the policy provides because those claims each require proof of intent. However, the Renos argue that Cooper's second and third claims, for negligent misrepresentation and civil conspiracy, do potentially or arguably fall within the scope of the policy. If so, and in view of its secondary promise to cover even "groundless, false or fraudulent" lawsuits, GuideOne must provide coverage.
Under "Section II — Liability Coverages," "Coverage E — Personal Liability," the GuideOne policy provides, in part:
 If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include pre-judgment interest against the "insured"; and
 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
The GuideOne policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: (a) `Bodily injury'; or (b) `Property damage.'" The policy defines "Property damage" as "physical injury to, destruction of, or loss of use of tangible property."
Returning to the liability insurance model we discussed above, the GuideOne policy promises to cover the Renos' risk of legal liability to a third party arising out of the occurrence of an accidental act or omission legally chargeable to the Renos which results or is alleged to have resulted in bodily injury or property damage to the third party, in a lawsuit filed by a third party against the Renos. Cooper's action alleges that the Renos engaged in negligent misrepresentation and civil conspiracy. If true, and proved, those alleged acts are legally chargeable to the Renos, and they are liable to the Coopers for their resulting losses. However, the alleged acts or omissions of the Renos aren't claimed by Cooper to have caused the property damage involved, which is the termite damage to the home that Cooper purchased from the Renos. The termites caused that. Further, the Renos' alleged acts or omissions aren't claimed to have caused bodily injury of any kind. Therefore, GuideOne's policy does not provide coverage for Cooper's claims against the Renos, because the policy does not promise that GuideOne will defend and indemnify the Renos against claims of that kind, and GuideOne has clearly shown that.
Our holding is consistent with our judgment in Cincinnati Ins. Co. v.Anders (Dec. 7, 2001), Greene App. No. 01-CA-42, unreported,[1] whereinthe very same underlying liability claims were presented. The coverageprovided in Anders was broader than the coverage provided here, however,because the homeowner's policy in Anders additionally promised to cover"personal injury" claims. We, nevertheless, found no coverage, reasoningthat neither a claim for civil conspiracy nor a claim for negligentmisrepresentation is a "personal injury" claim, because neither resultsin injury to the person. They are instead claims for economic loss. Soare the property damage claims the GuideOne policy covers in thisinstance. However, and as we've pointed out, the claims for whichGuideOne's policy provides coverage must arise out of a negligent act oromission of the Renos that causes the property damage alleged, and that'snot what Cooper alleged in his lawsuit against the Renos.
 The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO HOLD THAT GUIDEONE WAIVED OR WAS ESTOPPED FROM ASSERTING LACK OF COVERAGE BY ASSUMING THE DEFENSE WITHOUT RESERVING RIGHTS AND CONDITIONS.
 A reservation of rights consists of "notice given by the insurer thatit will defend the suit, but reserv[ing] all rights it has based onnoncoverage under the policy." Motorists Mut. Ins. Co. v. Trainor(1973), 33 Ohio St.2d 41, 45. GuideOne did not issue the reservation of rights letter to the Renos until December 3, 1999, after GuideOne had assumed their defense on November 17, 1999. In this assignment of error, the Renos argue that because GuideOne waived its reservation of rights, the doctrine of estoppel precludes GuideOne from disclaiming coverage.
The legal concepts of waiver and estoppel are often confused with one another and are sometimes merged. However, there are important distinctions between the two concepts.
A waiver is "the voluntary relinquishment of a known right or such conduct that warrants an inference of a relinquishment of that right."Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co. (1994),93 Ohio App.3d 292, 295. "By contrast, the doctrine of equitableestoppel precludes a party from asserting certain facts where the party,by his conduct, has induced another to change his position in good faithreliance upon the party's conduct." Id. (citing State ex rel. CitiesServ. Oil Co. v. Orteca (1980), 63 Ohio St.2d 295, 299).
While there exists a general rule that the doctrines of waiver and estoppel may not be used to expand an insurance policy's coverage, Ohio courts have recognized exceptions to that rule in certain circumstances. "An insurer should not be able to avoid liability under all circumstances in which it voluntarily relinquishes a known right or induces another into changing his position based upon reliance on the insurer's conduct when the insured is prejudiced by such reliance." Turner Liquidating,supra, at 299.
Thus, in an insurance case such as this, waiver and estoppel make up two sides of the same coin. Whether an insurer has waived its reservation of rights is measured by the affirmative conduct of the insurer. On the other side, estoppel acts as a bar against an insurer who refuses to defend an insured when the insured has relied on the insurer's conduct and was prejudiced in some material way.
The Turner Liquidating court limited the reach of its holding,concluding that "[w]aiver and estoppel should apply only in those caseswhere there is a clear misrepresentation of fact or when the insurerprovides a defense without reserving its rights for a period sufficient toprejudice the insured's ability to conduct its own defense." Id. Inother words, "[i]f the reservation of rights comes so late that itprejudices the insured's ability to defend the matter, a court may findthat the insurer has waived the reservations of rights." Dietz-Brittonv. Smythe, Cramer Co. (2000), 139 Ohio App.3d 337, 345.
 For example, in Dietz-Britton the court found that the insurer'sdefense of the insured for two years constituted a waiver of itsreservation of rights, which it had asserted only four weeks before thetrial date. See also Collins v. Grange Mut. Cas. Co. (1997),124 Ohio App.3d 574, 579 (providing a defense for sixteen months beforereserving its rights constitutes a waiver); Turner Liquidating, supra(providing a defense for one year before reserving its rights constitutesa waiver).
 We find the reasoning of Turner Liquidating and its progenypersuasive. Therefore, we turn our attention to the length of time afterGuideOne had promised to provide a defense to the Renos beforesubsequently reserving its right to disclaim coverage, and whether theRenos' ability to provide their own defense was prejudiced by GuideOne'sactions.
 The factors a court should consider when determining actual prejudicefrom a failure to reserve rights include:
 the loss of a favorable settlement opportunity, inability to produce all testimony existing in support of a case, inability to produce favorable witnesses, loss of benefit of any defense in law or fact through reliance upon the insurer's promise to defend, or withdrawal so near the time of trial that the insured is hampered in the preparation of its defense.
Dietz-Britton, supra, at 348 (citing 7C Appleman, Insurance Law andPractice (1979) 313-319, Section 4693).
 GuideOne notes that the time from their November 17 letter assuming theRenos' defense to its December 3 letter reserving its right to disclaimcoverage constituted but sixteen days. GuideOne argues that the Renoswere not prejudiced in any way because they had been represented byprivate counsel before, during, and after GuideOne's short involvementduring the preliminary stages of the case. We agree. Our review of therecord reveals that the Renos have failed to present sufficient evidencethat they either relied on or were adversely affected by GuideOne'spromised involvement in their case in any material way.
 In view of GuideOne's brief representation of the Renos, and absent ashowing that the Renos were prejudiced by GuideOne's involvement, wecannot find that GuideOne has waived its reservation of rights or thatestoppel barred GuideOne from asserting the right to decline coverage.
 The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO HOLD THAT GUIDEONE OWED MR. AND MRS. RENO THE OBLIGATION TO PAY FOR AN ATTORNEY SELECTED BY THEM, DUE TO ITS CONFLICT OF INTEREST.
The Renos argue that GuideOne should be required to pay for their privately retained attorney's cost of representation in the action that Cooper filed because GuideOne has a conflict of interest. Such a conflict can exist where, though it may disclaim coverage for some of the claims for relief in an action that a third party filed against its insured, the insurer has a duty to provide coverage against other claims in the same action. See Couch on Insurance 3d, Section 202.
The conflict alleged here is between GuideOne's duty to protect its own interests by denying coverage to the Renos and its duty to protect the Renos' interests in the action that Cooper filed. But, and as we have found, GuideOne has no duty of any kind to provide coverage for the Renos against Cooper's claims. Therefore, GuideOne has but one duty, to itself, not two duties that can, even arguably, be in conflict. No conflict of interest can then exist.
The third assignment of error is overruled.
 Conclusion Having overruled each assignment of error presented, the judgment ofthe trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.
[1] We certified a conflict to the Supreme Court of Ohio between ourholding in Anders and the judgment of the Fifth District Court of Appealsin Spalding v. Aetna Casualty Surety Co. (October 11, 1994), StarkApp. No. 9429, unreported. The Supreme Court has recently determined thata conflict, indeed, exists. See Entry, March 25, 2002, Cincinnati Ins.Co. v. Anders, Sup. Ct. Case No. 02-248.