OPINION
{¶ 1} Defendants-appellants, Harry Thomas, et al., appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, the Cincinnati Insurance Company, in a declaratory judgment action. We affirm the decision of the trial court.
 {¶ 2} Real estate developer Harry Thomas, Jr. is the owner of a corporation known as Lexington Manor, Inc. In 1999, Lexington Manor, Inc. purchased and developed a group of lots in Liberty Township ("the Lexington Manor subdivision") in preparation for sale to a home building company. Following the purchase, Mr. Thomas obtained an environmental assessment and learned that the site was contaminated with lead pellets from its former use as a skeet shooting range. He then retained the services of The Payne Firm, an environmental engineering group, to assess and resolve the soil contamination. As part of the remediation plan, the soil was treated and buried at the subdivision site.
 {¶ 3} Remediation of the site was completed in August 2000, when The Payne Firm certified that the property was suitable for residential development. Subsequently, Lexington Manor, Inc. sold 46 lots to builder Ryland Homes ("Ryland"). Ryland was aware of the prior soil contamination and remediation, and also received a copy of the Payne Firm certification. However, Ryland did not disclose this information to prospective homeowners. During negotiations for purchase of the lots, a number of prospective homeowners learned that the site had previously been used as a shooting range. Tests of the respective lots they intended to purchase revealed residual lead contamination. The prospective homeowners refused to complete the property transfers, and instead filed multiple lawsuits against the parties involved in creating the Lexington Manor subdivision.
 {¶ 4} Mr. Thomas, through his company H.T. Investments, held two insurance policies with appellee the Cincinnati Insurance Company ("CIC" or "the carrier"). One was a commercial package policy which included general liability coverage, and the other was an umbrella policy. H.T. Investments is the named insured under these policies; Lexington Manor, Inc. is not. CIC defended the insured Thomas parties and contributed funds to the settlement of the majority of the cases against them. Currently, one case remains pending in federal court, Ryland Group Inc.v. The Payne Firm Inc. et al. CIC is providing a defense in the federal case for the insured Thomas parties, including H.T. Investments, Harry Thomas, and employee Deanna Ricciardi (collectively, "Thomas").
 {¶ 5} In July 2003, CIC filed a declaratory judgment action seeking a determination that it did not and does not owe a defense or indemnification to Thomas for the litigation arising out of the Lexington Manor subdivision dealings. CIC filed an initial motion for summary judgment in September 2003, and later filed a revised motion in October 2004. Thomas filed its summary judgment motion in January 2005. Following a hearing on the motions, the trial court issued a decision in November 2005 granting CIC's motion and denying Thomas' motion. Thomas timely appealed, raising a single assignment of error.
 {¶ 6} We review a trial court's decision on a summary judgment motion de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also, Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact.Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these considerations in reviewing Thomas' sole assignment of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANTS IN FINDING IN FAVOR OF PLAINTIFF-APPELLEES IN THE DECLARATORY JUDGMENT ACTION AND FURTHER FINDING IN FAVOR OF PLAINTIFF-APPELLEES ON ALL COUNTERCLAIMS."
 {¶ 9} Thomas raises three issues in challenging the trial court's decision. First, Thomas maintains that CIC waived its right to pursue a declaratory judgment repudiating its duty to defend or indemnify Thomas in the litigation by undertaking to defend and settle a number of the lawsuits during the pendency of CIC's declaratory action. Next, Thomas contends that the pollution exclusions in the insurance policies do not bar coverage. Finally, Thomas argues that individual defendants Harry Thomas and Deanna Ricciardi do not personally have an ownership interest in the subject property, so the exclusions in the policies do not apply to them as individuals and coverage exists for the claims brought against them in the various lawsuits.
 {¶ 10} Thomas correctly notes that the property in question was owned, developed, remediated, and sold by Lexington Manor, Inc. It is undisputed that the Lexington Manor subdivision is not a property listed for coverage under the insurance policies. It is also undisputed that Lexington Manor, Inc. is not a named insured under the policies. Accordingly, it is true that the pollution exclusion has no effect on Lexington Manor, Inc. But the entity is not entitled to coverage under the insurance policies either. Thomas' argument that he and his employees were acting in their capacity as agents for Lexington Manor, Inc. thus results in no coverage. Thomas cannot disclaim application of the pollution exclusion to Lexington Manor, Inc. in one breath and then invoke the benefit of coverage for the corporation in another.
 {¶ 11} As stated, H.T. Investments is an insured under the CIC policies. If Thomas and his employees assert that they were acting as agents of H.T. Investments in their dealings with the Lexington Manor subdivision, then they would be amenable to coverage. However, the pollution exclusion would operate as a bar. Both policies contain similar pollution exclusions that deny coverage under certain circumstances where pollutants cause bodily injury or property damage. The umbrella policy states that it does not apply to:
 {¶ 12} "Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants * * * [a]t or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations * * * to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."
 {¶ 13} Deemed "absolute" pollution exclusions, provisions such as this are commonly employed in the insurance industry to eliminate all pollution claims and are often upheld by courts. See McGuirk Sand Gravel, Inc. v. Meridian Mut. Ins. Co. (1996), 220 Mich.App. 347, 354
(noting that "[t]he vast majority of courts asked to interpret absolute pollution exclusions have concluded that the exclusions are unambiguous and operate to exclude coverage for all claims alleging damage caused by pollution"). In fact, the precise language used in CIC's umbrella policy pollution exclusion has been declared clear and unambiguous by at least one Ohio appellate court. See Selm v. American States Ins. Co. (Sept. 21, 2001), Hamilton App. No. C-010057, 2001 WL 1103509 at *2-3.
 {¶ 14} Turning to the facts of the case, it is evident that CIC's unambiguous pollution exclusion prohibits coverage. Thomas admittedly hired The Payne Firm to test for and treat the lead pollution in the Lexington Manor subdivision soil. Under the plain terms of the insurance contract, such conduct clearly triggers the pollution exclusion. Consequently, even were the Thomas employees to assert that they were acting as agents of H.T. Investments in their dealings with the Lexington Manor subdivision, there would be no coverage.
 {¶ 15} We also find no merit in Thomas' argument that CIC waived its right to deny coverage by defending Thomas and settling a number of claims. Generally, waiver and estoppel cannot be invoked to create coverage under an insurance policy where coverage otherwise does not exist. Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 668. One exception to this is where an insurer undertakes to defend or settle a claim against an insured for such a period of time as to prejudice the insured without preserving its right to assert policy defenses. See Nationwide v. Harvey (1976), 50 Ohio App.2d 361, 364.
 {¶ 16} An insurance carrier may protect its rights under an insurance contract by executing a bilateral non-waiver agreement or a unilateral reservation of rights. Motorist Mut. Ins. Co. v. Trainor (1973),33 Ohio St.2d 41, 45. Here, CIC took both precautions. The carrier and H.T. Investments entered into a non-waiver agreement in January 2002. In addition, it is undisputed that CIC issued a reservation of rights letter prior to defending Thomas in the first of the Lexington Manor subdivision lawsuits. CIC submitted a new reservation of rights lettereach time a new suit was filed against Thomas. Thomas can hardly claim lack of notice in the face of the five reservation letters he received from CIC. At least one of the letters specifically expressed doubts about coverage due to certain exclusions in the policies. Furthermore, the fact that CIC defended Thomas in litigation, alone, is not indicative of coverage because an insurance carrier may provide a defense under a reservation of rights to avoid a claim of bad faith.
 {¶ 17} We refuse to accept Thomas' legally baseless contention that CIC was required to specifically reserve its right to settle or to seek permission of its insured to settle in order to preserve its right to deny coverage. The fact that CIC settled the homeowners' lawsuits does not constitute a waiver because payment of disputed coverage is left to the carrier's discretion.
 {¶ 18} We conclude that CIC satisfied its burden that there were no genuine issues for trial. The common pleas court thus properly granted summary judgment in favor of CIC. Thomas' single assignment of error is overruled.
 {¶ 19} Judgment affirmed.
HENDRICKSON and WALTERS, JJ., concur.
Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV
of the Ohio Constitution.
Walters, J., retired, of the Third Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.