[Cite as *Burdette v. Bell*, 2019-Ohio-5035.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| BARRY S. BURDETTE, et al., | : | CASE NO. CA2019-04-005 |
| Appellants, | : | O P I N I O N<br>12/9/2019 |
| | : | |
| - vs - | : | |
| | : | |
| LACHELL B. BELL, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 16CV30690


Intili & Groves Co., L.P.A., Thomas J. Intili, 2300 Far Hills Avenue, Dayton, Ohio 45419-1550, for appellants

Freund, Freeze & Arnold, Gordon D. Arnold, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402, for appellee, State Farm Fire and Casualty Company


**M. POWELL, J.**

{¶ 1} Appellants, Barry and Sandra Burdette, appeal a decision of the Preble County Court of Common Pleas granting summary judgment to appellee, State Farm Fire and Casualty Company.

{¶ 2} On January 2, 2015, Barry Burdette was injured when he was struck in a

crosswalk by an automobile driven by Lachell Bell, who was delivering pizzas for JimJam, Inc., dba Sarah's Pizza. Bell was driving her personal vehicle. Her automobile insurance had lapsed the day before. JimJam was insured under a Businessowners Insurance Policy issued by State Farm ("State Farm policy").

{¶ 3} On January 8, 2016, the Burdettes filed a complaint in the trial court against JimJam and Bell. State Farm provided defense counsel to JimJam. On March 6, 2017, State Farm moved to intervene in the litigation. State Farm sought a declaratory judgment that it was not required to defend or indemnify JimJam or Bell because the State Farm policy excluded coverage for claims arising from the use of any automobile. The trial court denied the motion, finding that it was untimely and that State Farm could raise its coverage defense in a post-judgment proceeding pursuant to R.C. 3929.06.

{¶ 4} On September 29, 2017, the Burdettes, JimJam, and Bell entered into a consent judgment pursuant to which the Burdettes were granted a $400,000 judgment but agreed to seek satisfaction of the judgment exclusively under the State Farm policy. State Farm refused to satisfy the judgment within 30 days of the entry of the consent judgment. Consequently, the Burdettes filed a supplemental complaint against State Farm for an order that it pay the $400,000 judgment. State Farm answered, arguing that the State Farm policy excluded coverage for bodily injury arising out of the use of any automobile.

{¶ 5} The Burdettes asserted claims that State Farm had waived its coverage defense or was estopped from advancing such a defense because of its failure to assert it at an earlier time. The Burdettes thereafter sought discovery upon their waiver and estoppel claims. State Farm moved for a protective order. The Burdettes moved to compel State Farm to comply with their discovery requests. On June 26, 2018, the trial court granted State Farm's motion for a protective order, thereby prohibiting the Burdettes from seeking discovery related to their waiver and estoppel claims. The trial court found that the

- 2 -

Burdettes had no standing to assert such claims because they were a third party to the State Farm policy. The trial court further found that the issue of whether the State Farm policy "excludes coverage in this case * * * will be resolved by the language of the insurance contract and applicable rules of construction."

{¶ 6} State Farm and the Burdettes filed cross-motions for summary judgment. State Farm argued it had no duty to indemnify the Burdettes for their losses because the State Farm policy excluded coverage for losses resulting from the use of an automobile. The Burdettes argued that State Farm was liable for their losses under the "products-completed operations hazard" coverage of the State Farm policy, or alternatively, because of its breach of an amendatory endorsement to the policy. The Burdettes further argued that State Farm had waived its coverage defense or was estopped from denying coverage.

{¶ 7} On March 15, 2019, the trial court denied the Burdettes' motion for summary judgment and granted summary judgment in favor of State Farm. The trial court found that liability for losses from use of an automobile was excluded under the State Farm policy. The trial court further found that the "products-completed operations hazard" ("PCOH") provisions in the State Farm policy did not provide a separate type of coverage but were simply definitions establishing a limit for coverage. The trial court once again rejected the Burdettes' argument relating to waiver and estoppel.

{¶ 8} The Burdettes now appeal, raising two assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE STATE FARM FIRE AND CASUALTY COMPANY AND BY DENYING SUMMARY JUDGMENT FOR PLAINTIFFS-APPELLANTS.

{¶ 11} The Burdettes argue the trial court erred in granting summary judgment to State Farm because (1) as an employee or volunteer worker of JimJam, Bell is an "insured"

- 3 -

under the State Farm policy and the exclusion from use of an automobile does not apply, (2) the PCOH provisions of the State Farm policy provide a separate coverage under the policy, and (3) State Farm waived its coverage defense or is estopped from denying coverage.

{¶ 12} Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion which is adverse to the nonmoving party. Civ.R. 56(C); *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.* An appellate court reviews a trial court's decision to grant or deny summary judgment de novo, without any deference to the trial court's judgment. *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

{¶ 13} The central issue in this case is whether the Burdettes' losses are covered under the State Farm policy and involves construction of the automobile exclusion in the policy as well as language pertaining to the policy's PCOH provisions.

{¶ 14} An insurance policy is a contract whose interpretation is a matter of law, subject to de novo review. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). The insurance contract must be examined as a whole, and a court will presume that the intent of the parties is reflected in the language used in the policy.

- 4 -

*Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7. Terms in an insurance policy must be given their plain and ordinary meaning, and only where an insurance policy is ambiguous and susceptible of more than one interpretation must the policy language be liberally construed in favor of the insured or claimant seeking coverage. *D.I.C.E., Inc. v. State Farm Ins. Co.*, 6th Dist. Lucas No. L-11-1006, 2012-Ohio-1563, ¶ 22, citing *Buckeye Union Ins. Co. v. Price*, 39 Ohio St.2d 95 (1974).

{¶ 15} The Burdettes first argue that State Farm is liable for their losses because as an employee or volunteer worker of JimJam, Bell was an "insured" under the State Farm policy and the exclusion from use of an automobile does not apply.

{¶ 16} The State Farm policy consists of two main sections. Section I is entitled "PROPERTY" and Section II is entitled "LIABILITY." Section II is further divided into "Coverage L – Business Liability" and "Coverage M – Medical Expenses." Coverage L lists several exclusions of coverage, including for "Aircraft, Auto or Watercraft." As relevant here, this specific exclusion provides that "this insurance does not apply to 'Bodily injury' or 'property damage' arising out of the ownership or use of any 'auto' owned or operated by any insured." *See* Section II – Exclusions, Paragraph 8. "Use also includes operation and 'loading and unloading.'" *Id.* Paragraph 8 is, however, modified by Paragraph 8.e which stated that "[t]his exclusion does not apply to 'Bodily injury' or 'property damage' arising out of the use of any 'non-owned auto' in your business by any person[.]" However, Endorsement CMP-4765 modified the exclusions provision of the policy by deleting Paragraph 8.e.

{¶ 17} Thus, stated more simply, Paragraph 8 generally excluded coverage for losses arising from the ownership or use of any automobile by any insured. Paragraph 8.e provided an exception to this exclusion by extending coverage for losses arising from the use of non-owned automobiles in JimJam's business by any person. However,

- 5 -

Endorsement CMP-4765 deleted Paragraph 8.e from the policy and the coverage that would otherwise apply to the business use of a "non-owned auto." Thus, following Endorsement CMP-4765, losses arising from the ownership or use of any automobile by any insured were excluded.

{¶ 18} The Burdettes argue that their losses are not excluded from coverage because Bell is an "insured" under the policy. As relevant here, Section II – Who Is An Insured originally designated who was an insured under two separate scenarios, Paragraph 1 – "Except for liability arising out of the use of 'non-owned autos,'" and Paragraph 2 – "Only with respect to liability arising out of the use of 'non-owned autos.'" Endorsement CMP-4765 deleted Paragraph 2 in its entirety and deleted the "Except for liability arising out of the use of 'non-owned autos'" language in Paragraph 1. The Burdettes argue that their losses are covered under the policy because Bell, as an employee or volunteer worker of JimJam, is an "insured" under Paragraph 1.b(1) of the policy. That provision states that

> Each of the following is also an insured:
>
> Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," * * * but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

{¶ 19} The Burdettes are correct that Bell qualifies as an "insured" under Paragraph 1.b(1) of the State Farm policy and Endorsement CMP-4765, provided that Bell acted within the scope of her employment or while performing duties related to the conduct of JimJam's business. Nevertheless, we find that the State Farm policy does not cover the Burdettes' losses. Endorsement CMP-4765's deletion of Paragraph 8.e did not affect the remainder of Paragraph 8. Pursuant to Paragraph 8, the State Farm policy does not apply to losses "arising out of the *ownership [or] use* of *any 'auto'* owned or operated by *any insured*." (Emphasis added.) At the time of the incident, Bell, an insured, owned and was operating

her automobile; Barry Burdette suffered injuries arising out of Bell's ownership and use of her automobile. Because the losses arose "out of the *ownership [or] use* of *any 'auto'* owned or operated by *any insured*," Paragraph 8 applies, thereby excluding coverage.

{¶ 20} The trial court, therefore, did not err in finding that the State Farm policy excluded coverage for the losses suffered by the Burdettes as a result of Bell's automobile striking Barry Burdette.

{¶ 21} The Burdettes further argue that State Farm is liable for their losses because the State Farm policy provides separate coverage under its PCOH provisions.

{¶ 22} The term PCOH is discussed in three places in the policy, the declarations page, the limits of insurance provision in Section II, and the definitions provision in Section II. The declarations page states that under Section II – LIABILITY, two separate categories of Limit of Insurance are provided, one for COVERAGE, consisting of Coverage L, Coverage M, and Damages to Premises Rented To You, and one for AGGREGATE LIMITS, consisting of "Products/Completed Operations Aggregate" and "General Aggregate."

{¶ 23} The limits of insurance provision of Section II provides in relevant part that

(1) The Limits of Insurance of SECTION II – LIABILITY shown in the Declarations and the rules below fix the most we will pay * * * .

(2) The most we will pay for * * * "bodily injury," "property damage" and medical expenses arising out of any one "occurrence" * * * is the Coverage L – Business Liability shown in the Declarations[.]

(3) * * *

(4) Aggregate Limits

The most we will pay for:

(a) All "bodily injury" and "property damage" that is included in the [PCOH] is the Products and Completed Operations Aggregate limit shown in the Declarations.

(b) All:

(1)"Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the [PCOH];

(2) * * *

(3) * * *

is the General Aggregate limit shown in the Declarations.

{¶ 24} The definitions provision in Section II defines PCOH as "[i]nclud[ing] all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned."

{¶ 25} Upon reading the State Farm policy as a whole, we find that the PCOH provisions do not create a distinct coverage separate and apart from the delineated coverage portions of the policy. Multiple courts have reached the same conclusion when faced with similar or identical policy language. While these cases are not controlling on this court, we find their reasoning to be persuasive and therefore apply it.

{¶ 26} As stated above, the State Farm policy lists only two coverages under Section II – LIABILITY, Coverage L for Business Liability and Coverage M for Medical Expenses. By contrast, PCOH is simply listed in the definitions provision of Section II and is not designated as a distinct type of coverage. *See Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, W.D.Wa No. C14-0868JLR, 2015 U.S. Dist. LEXIS 42397 (Mar. 30, 2015). There is no separate coverage for PCOH because there is no independent provision in the policy defining and providing coverage under PCOH. *D.I.C.E., Inc. v. State Farm Ins. Co.*, Lucas C.P. Nos. CI06-2001 and CI04-5806, 2006 Ohio Misc. LEXIS 3949 (Nov. 20, 2006).

{¶ 27} As defined in the State Farm policy, the PCOH provisions apply to bodily injury or property damage that arises out of the insured's completed work or product as opposed

- 8 -

to its ongoing operations. However, while providing a separate definition for completed products allows the insurer to set different limits of liability for an insured's completed products, it does not alter the prerequisites to coverage. *See Natl. Union Fire Ins. Co. v. Puget Plastics Corp.,* 450 F.Supp.2d 682 (S.D.Tx.2006). In other words, the PCOH provisions do not create coverage exempt from the "Coverage L – Business Liability " exclusions, including the automobile use exclusion. Rather, they delineate the scope of coverage, making clear that insurance coverage continues to apply to work or products that have been completed. *See Auto-Owners Ins. Co. v. Potter*, 105 F.Appx 484 (4th Cir.2004).

{¶ 28} Likewise, the fact that the declarations page and the limits of insurance provision both designate a separate limit of liability for PCOH does not lead to the conclusion that PCOH provides a separate coverage. A different limit of liability for PCOH is just that, a different applicable limit, not a separate form of coverage. *See Berkshire,* 2015 U.S. Dist. LEXIS 42397; *Sparta Ins. Co. v. Colareta*, 990 F.Supp.2d 1357 (S.D.Fla.2014). Again, contrary to the Burdettes' argument, no indication exists that the PCOH functions as a distinct type of coverage subject to different terms under the policy. *Colareta.*

{¶ 29} As a federal court observed, what the limits of insurance provision does is simply explain the amount of damages the policy will cover, and when read together with the definition of PCOH, delineates the declared limits of the insurance for off-premises "bodily injury" arising from JimJam's product. *See Valmont Energy Steel Inc. v. Commercial Union Ins. Co.,* 359 F.3d 770 (5th Cir.2004). The "General Aggregate Limit" and the "Products/Completed Operations Aggregate Limit" thus divided the amount of coverage offered under the policy into two components, each of which contained its own coverage limitation. The General Aggregate Limit provided coverage of up to $ 2,000,000 for all "bodily injury" *except* damage occurring away from JimJam's premises arising from PCOH.

Damage that occurred away from JimJam's premises arising from PCOH had its own declared "Products/Completed Operations Aggregate Limit," also of $ 2,000,000. *See id.* The "Products/Completed Operations Aggregate Limit" does not separately grant a PCOH coverage.

{¶ 30} The trial court, therefore, did not err in finding that the PCOH provisions in the State Farm policy do not provide a separate type of coverage.

{¶ 31} The Burdettes further argue that State Farm waived its coverage defense and is estopped from denying coverage because of its delay in claiming there was no coverage for the Burdettes' losses under the State Farm policy. The Burdettes aver they became subrogated to the rights of JimJam and Bell under the policy once they became judgment creditors and thus, they can assert against State Farm its breach of the policy when it failed to timely determine coverage issues.

{¶ 32} Generally, waiver and estoppel cannot be invoked to create coverage under an insurance policy where coverage otherwise does not exist. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 668 (1992). "A company should not be obligated to cover a risk for which it did not contract." *Id.* One exception to that general rule may occur, however, when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured. *Collins v. Grange Mut. Cas. Co.*, 124 Ohio App.3d 574, 578 (12th Dist.1997); *Cincinnati Ins. Co. v. Thomas*, 12th Dist. Butler No. CA2005-12-518, 2006-Ohio-6540, ¶ 15.

{¶ 33} In support of their argument they became subrogated to the rights of JimJam and Bell under the State Farm policy, the Burdettes cite *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582 (1994); *Mueller v. Atlas Constr.*, 2d Dist. Montgomery No. 15755, 1996 Ohio App. LEXIS 4778 (Oct. 25, 1996); and *Sesko v. Caw*, 8th Dist. Cuyahoga No. 87359, 2006-Ohio-5434.

{¶ 34} We find that *Mueller* and *Sesko* do not support the Burdettes' subrogation argument and are therefore not applicable. Both decisions generally mentioned R.C. 3929.06 which provides that when a plaintiff obtains a judgment against an insured and the insurer fails to pay the judgment under the insurance policy, the judgment creditor may file a supplemental complaint against the insurer. *Mueller* simply recognized a third-party judgment creditor's right of action against the judgment debtor's insurer pursuant to R.C. 3929.06.

{¶ 35} *Sesko*, in turn, merely observed in dicta at the outset of the opinion that in filing a supplemental complaint under R.C. 3929.06, "the judgment creditor 'steps into the shoes' of the judgment debtor, and the insurance company has the right to assert in the supplemental action any defenses or rights it has that may be enforced against the insured. R.C. 3929.06(C)(1)." *Sesko*, 2006-Ohio-5434 at ¶ 1. The court of appeals upheld the dismissal of the judgment creditor's R.C. 3929.06 supplemental complaint on summary judgment because the insurer did not receive notice of the creditor's claim until after a default judgment was entered against the judgment debtor.

{¶ 36} *Sanderson* involved an insurer's failure to defend a lawsuit filed against its insured. The insured settled the claim without further notice to the insurer. In return, the plaintiff agreed to seek satisfaction of the judgment from insurance proceeds. The plaintiff subsequently filed a supplemental complaint against the insurer pursuant to R.C. 3929.06. The insurer argued that its insured had breached the insurance policy by failing to provide notice of the settlement. The Ohio Supreme Court rejected this argument, holding that the insurer's failure to defend its insured constituted a breach of the insurance contract, thereby leaving the insured free to settle the claim without further notice to the insurer.

{¶ 37} The supreme court further held that "the judgment creditor has standing in the supplemental proceeding to assert that the insurer waived policy conditions by failing to

defend its insured in the underlying action[.] R.C. 3929.06 confers a statutory right of subrogation upon any judgment creditor authorized by that provision to file a supplemental petition." *Sanderson*, 69 Ohio St.3d at 587.

{¶ 38} We find that the trial court did not err in rejecting the Burdettes' waiver and estoppel claims. As we held above, coverage does not exist for the Burdettes' losses under the State Farm policy. Waiver and estoppel cannot be invoked to create coverage under an insurance policy where coverage otherwise does not exist. *Hybud*, 64 Ohio St.3d at 668. One exception to that general rule is when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured. *Collins*, 124 Ohio App.3d at 578. State Farm defended JimJam throughout the proceedings. The record indicates that State Farm sent a reservation of rights letter to JimJam on February 29, 2016, almost two months after the Burdettes filed their lawsuit against JimJam and Bell.[1] The Burdettes assert on appeal that their waiver and estoppel argument is not based upon whether State Farm sent a reservation of rights letter but upon its delay in asserting a coverage defense and their detrimental reliance upon State Farm apparently covering their claim.

{¶ 39} Regardless of whether State Farm provided a reservation of rights letter, neither JimJam nor Bell were prejudiced. The September 29, 2017 consent judgment expressly prevented JimJam and Bell from having any obligations arising out of the Burdettes' claims. Thus, JimJam and Bell will not pay anything to settle the $400,000 settlement. There is no evidence that JimJam detrimentally relied on a belief there was coverage under the State Farm policy. As the trial court aptly noted, "there is no prejudice to the insured arising from any action or inaction of State Farm." Thus, under the

---

1. A copy of the reservation of rights letter was attached to a March 2017 motion for partial withdrawal of JimJam's defense counsel.

circumstances of this case, JimJam and Bell had no right to assert a waiver claim against State Farm.

{¶ 40} The Burdettes claim that State Farm's untimely assertion of its coverage defense resulted in prejudice due to the "substantial time, effort and money" they expended to advance their claims in the interim. However, the time, effort, and money expended by the Burdettes in prosecuting their claims may not be equated with prejudice to JimJam to which the Burdettes may be subrogated. The Burdettes had no rights under the State Farm policy and State Farm was under no obligation to advise them regarding coverage. The Burdettes were free to pursue their claims as they saw fit, including conducting discovery regarding insurance coverage for their claims. Civ.R. 26(B)(2).

{¶ 41} Even assuming that the Burdettes became subrogated to the rights of JimJam and Bell under the policy once they became judgment creditors, their rights in a R.C. 3929.06 supplemental action is no greater than the rights of the insured/judgment debtor. Although the Burdettes may assert State Farm waived its coverage defense in their R.C. 3929.06 supplemental action, there is none to assert in this case as JimJam and Bell had no right to assert such a claim.

{¶ 42} In light of the foregoing, the trial court did not err in granting summary judgment to State Farm. The Burdettes' first assignment of error is overruled.

{¶ 43} Assignment of Error No. 2:

{¶ 44} THE TRIAL COURT ERRED BY GRANTING DEFENDANT-APPELLEE STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR PROTECTIVE ORDER AND BY DENYING PLAINTIFFS-APPELLANTS' MOTION TO COMPEL.

{¶ 45} The Burdettes argue that the trial court erred in denying their motion to compel discovery and granting State Farm's motion for a protective order regarding their waiver and estoppel claims. Specifically, the Burdettes argue that the trial court's protective order

adversely affected their "substantial rights, because State Farm's apparent noncompliance with CMP-4235 constitutes waiver of its right to deny coverage for the Burdettes' losses. Thus, the nature, timing and extent of State Farm's investigation of the Burdettes' claims are discoverable relative to the issues of waiver and estoppel[.]"

{¶ 46} A trial court has broad discretion in regulating the discovery process and, therefore, a trial court's decision on discovery matters will not be reversed absent an abuse of discretion. *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 590-592 (1996). The discretion of the trial court, however, is not without limits. An appellate court can reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights. *Id.*; *Jones v. Contemporary Image Labeling, Inc.,* 12th Dist. Warren No. CA2009-02-017, 2009-Ohio-6178, ¶ 21.

{¶ 47} CMP-4235 is an amendatory endorsement to the State Farm policy that amends the conditions provision of Section I of the policy as follows: "We will give you notice, within 21 days after we receive a property executed proof of loss, that we (a) accept your claim; (b) deny your claim; or (c) need more time to investigate your claim." The endorsement further provides that if more time is needed to investigate the claim, State Farm will provide an explanation of the need for additional time and will continue to notify JimJam in writing at least every 45 days.

{¶ 48} The language of Amendatory Endorsement CMP-4235 relied upon by the Burdettes is strictly limited to Section I of the State Farm policy. Section I provides coverage for buildings and other property and only addresses first-party property damage claims, that is, claims JimJam would make based upon damage to its property. The Burdettes' losses do not fall within Section I of the policy. Amendatory Endorsement CMP-4235 therefore has no applicability to the Burdettes' claims. Accordingly, we find no abuse of discretion in

the trial court's grant of protective order and denial of the Burdettes' motion for discovery.

{¶ 49} The Burdettes' second assignment of error is overruled.

{¶ 50} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.